IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JODY MICHAEL WAGNER,

                                                    OPINION AND ORDER

               Plaintiff,

                                                         12-cv-376-bbc

     v.

DALIA SULIENE M.D.,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this lawsuit, plaintiff Jody M. Wagner is proceeding on an Eighth Amendment deliberate indifference claim against defendant Dalia Suliene for failure to provide him proper treatment for his hip pain. The case is before the court on defendant's motion for summary judgment, to which plaintiff has responded. Defendant chose not to file a reply. After considering the parties' summary judgment materials, I conclude that plaintiff has failed to show that defendant acted with deliberate indifference toward his hip pain. Accordingly, I will grant defendant's motion for summary judgment and direct the clerk of court to close the case.

As a preliminary matter, I note that along with his summary judgment response materials, plaintiff has filed a motion for more time to take discovery under Fed. R. Civ. P. 56(d). Plaintiff states that he has encountered difficulties with prison library staff in making copies of his medical records. Further, he states that he made one discovery request to defendant for these records but she objected, stating that plaintiff could obtain the

1

documents himself from the Health Services Unit.  I will deny this motion, because it appears that plaintiff waited until almost the last minute to procure copies of the records; plaintiff states that he spoke to a "CCI school staff member" about making copies "more than one week before" the January 3, 2014 deadline (which I understand to be slightly more than one week before the deadline) but the copies were not completed by the deadline. "Rule [56(d)] does not operate to protect parties who are dilatory in the pursuit of discovery." Allan Block Corp. v. County Materials Corp., 588 F.Supp. 2d 976, 980 (W.D. Wis. 2008) (citing Doty v. Illinois Central Railroad Co., 162 F.3d 460, 461–62 (7th Cir. 1998)).  Plaintiff was granted leave to proceed on claims against defendant on December 12, 2012 and defendant's summary judgment motion was filed on October 24, 2013; plaintiff had more than enough time to gather his medical records.

Moreover, defendant's refusal to respond to his discovery request is irrelevant because plaintiff did not file a motion to compel after defendant objected, and even if he had, it is likely it would have been denied because plaintiff did not show that defendant had failed to make the documents available to plaintiff.  In short, plaintiff alone is responsible for his failure to get copies of his medical records because he waited until it was too late to work out any problems that might arise.

Turning to defendant's motion for summary judgment, I note at the outset that neither party has performed admirably in presenting their summary judgment materials, particularly in presenting the facts necessary to resolve this motion.  As discussed above, plaintiff's failure to gather discovery in a timely fashion hampered his ability to procure copies of the medical records he intended to submit, although defendant has submitted most

2

of the medical records that plaintiff would presumably find relevant.  In addition, defendant submitted a largely unhelpful brief-in-chief consisting almost entirely of boilerplate and then chose not to reply to plaintiff's proposed findings of fact, which means that the facts presented by plaintiff will be treated as undisputed.  Finally, both parties have submitted proposed findings of fact containing more detail than would be preferable in some respects and less detail than would be preferable in others.  In general, they provide significant amount of detail regarding many aspects of plaintiff's treatment.  But the case is neither about plaintiff's treatment in general nor about the entire length of time he has been incarcerated; as I stated in the December 12, 2012 screening order in this case, I granted plaintiff leave to proceed on a claim against defendant "for failure to provide him with his prescribed pain treatment."  More specifically, I described the claim as follows:

> As a general rule, prison officials are not deliberately indifferent to a prisoner's medical needs simply because they deny the prisoner the particular medical treatment of his choice.  Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005).  However, in the present case, plaintiff alleges that defendant Suliene disregarded Dr. [Richard] Illgen's prescription for the hydrocorticosteroidal injections, even in the face of plaintiff's complaints that other medication given him was ineffective.  These allegations are sufficient to state a claim against Suliene.

Dkt. #9.  Therefore, the medical decisions at issue in this case are the decisions defendant made between Illgen's January 12, 2012 report and the May 29, 2012 appointment at UW Hospital, at which plaintiff received his first steroid injection.  Although defendant's response to plaintiff's complaints of pain is one of the major aspects of the case, neither party explains in much detail the history of the prescriptions defendant provided to plaintiff. However, the medical records provided by defendant contain a section marked "prescriber's

3

orders" containing some of this information, and I do not understand plaintiff to be arguing that defendant ever failed to give him the medications she prescribed, so I will include that information in the undisputed facts section below.

Thus, from the parties' proposed findings of fact and supporting evidence, including plaintiff's medical records, I find that the following facts are material and undisputed unless indicated otherwise.

UNDISPUTED FACTS

Plaintiff Jody Wagner has been incarcerated at the Columbia Correctional Institution since March 29, 2011.   Defendant Dalia Suliene was employed by the Wisconsin Department of Corrections as a physician at Columbia Correctional Institution from 2006 until her retirement on April 5, 2013.

Plaintiff was in a car accident in 1997 in which he injured his right hip.  After surgery, he was left with four screws in the hip.

In February 2011, when plaintiff began his current term of confinement (at the Dodge Correctional Institution), he completed an Intake Screening/Medical History Form. On the form, plaintiff stated that his doctor outside the prison, Dr. William Bong, had recommended a total right hip replacement to be performed sometime in 2011.  Bong had also previously prescribed plaintiff "intra-articular corticosteroid injections" for his hip pain, but this information does not appear on the intake document.

On May 6, 2011, defendant saw plaintiff after he had been transferred to the Columbia Correctional Institution Health Services Unit for complaints of right hip pain.

4

Defendant issued plaintiff a prescription for 600 milligrams of ibuprofen to be taken three times a day and ordered xrays of his right hip.

Plaintiff was seen by nursing staff on June 30, 2011 for complaints of severe hip pain as well as pain in his right leg. An appointment was scheduled with a physician to follow up.

On July 19, 2011, defendant saw plaintiff in the Health Services Unit for complaints of pain radiating down his right leg and pain in his groin area. She reviewed the interpreting physician's report and noted that plaintiff's xrays were positive for post-traumatic degenerative joint disease, or osteoarthritis. Defendant states that following this appointment, it was her opinion that plaintiff's pain was neuropathic in nature, meaning that it stemmed from problems with signals from the nerves. This type of pain is less likely than other types of pain to be helped by traditional painkillers. Defendant prescribed 300 milligrams of gabapentin (which I understand defendant to be saying is not a "traditional" painkiller). Plaintiff told defendant that from his knowledge of other inmates who had taken gabapentin that the medication would not work for him. He asked defendant for "something else from the formulary," but defendant insisted on gabapentin. Also, defendant ordered that plaintiff be provided an extra pillow for one year to help alleviate his leg pain and submitted a "Class III request" for approval for plaintiff to be taken off site for an electromyogram (a nerve conduction study that measures the electrical activity of muscles) to rule out sciatica. Defendant ordered that Dr. Ellen O'Brien review plaintiff's right hip xrays during her next visit to the prison. O'Brien is an orthopedic specialist who visits the Columbia Correctional Institution monthly. On July 22, 2011, the Class III request for an electromyogram was denied.

5

On August 5, 2011, plaintiff was seen by nursing staff after he slipped on a wet floor while working the day before.  Although plaintiff "did not think anything of it" when it happened, he was now complaining of a groin pull and a bruise on his right side.

On August 12, 2011, Dr. O'Brien examined plaintiff and reviewed his x-rays.  She noted that there had been a gradual decline in function since plaintiff's fracture/dislocation in 1997 and a large resolving bruise related to his slip and fall on August 5, 2011.  O'Brien suggested obtaining the initial surgical report as well as further xrays in order to assess the anterior superior iliac spine.

On August 15, 2011, defendant met with plaintiff.  Defendant reviewed the orders and requested a followup appointment with Dr. O'Brien during the next monthly clinic, once the surgical report was received and further xrays were performed.  (Plaintiff states that defendant said that she was unable to give him a pain-relieving injection and that he would get only the gabapentin that she had prescribed.  Plaintiff told her that the gabapentin was not working at all to alleviate his severe pain and that he could barely sleep or even use the bathroom.  She stated that "she did not care, there was nothing else she would do for him.")

Plaintiff had additional xrays taken on August 23, 2011.  Defendant reviewed the xrays the next day.  On September 16, 2011, Dr. O'Brien reviewed plaintiff's xrays and performed a followup exam.  She suggested a referral to UW Orthopedics to determine whether plaintiff was a good candidate for hip arthroscopy, a procedure allowing a physician to view the interior of the hip joint through an arthroscope.

On September 26, 2011, plaintiff was prescribed 500 milligrams of the painkiller naproxen.

On October 3, 2011, plaintiff was seen in the Health Services Unit.  He requested a cane.  Defendant ordered that a cane be provided for him while he was incarcerated at the Columbia Correctional Institution.  (Plaintiff states that the cane was ordered for one year, not permanently.)

Defendant saw plaintiff on November 7, 2011 for complaints unrelated to his hip pain.  At the time, she noted that she would submit a request for him to have a consultation at UW Orthopedics for his hip.  On November 9, 2011, defendant submitted a Class III request for plaintiff for the consultation.  It was approved on November 15, 2011.  On November 14, 2011, plaintiff was prescribed 600 milligrams of gabapentin.  On November 21, 2011, defendant ordered six months of pain rub for plaintiff to help alleviate his pain.

On December 9, 2011, plaintiff was prescribed 800 milligrams of ibuprofen.

On January 12, 2012, plaintiff met with Dr. Richard Illgen at UW Hospital and Clinics on for an orthopedic consultation.  Illgen is an associate professor of the UW Department of Orthopedics and Rehabilitation.  In the "plan" section of his report, Illgen stated that Health Services Unit staff should "continue providing nonoperative care with the use of NSAIDs and 'injections' as needed at his correctional institution."  (The parties seem to agree that by "injections," Illgen meant corticosteroid injections.)  He stated that plaintiff could follow up in five years to assess the progression of osteoarthritis and indicated in his note that plaintiff was agreeable with the care plan.

Defendant saw plaintiff on February 17, 2012.  Defendant noted that plaintiff had a "more positive outlook" after his visit to UW and that he planned to exercise more often.  Defendant continued plaintiff's prescriptions as before (I understand this to be some

7

combination of naproxen, gabapentin and ibuprofen).  (Plaintiff does not dispute this version of events, but states that after Dr. Illgen made his recommendation for steroid injections on January 12, 2012, plaintiff asked defendant to provide him the injections at least five times.  With regard to some or all of these requests (and at least at the February 17, 2012 appointment), defendant stated that the prison was not equipped to give the injections and that Dr. Illgen had not specified where on plaintiff's body the injections were to be administered.)

On March 13, 2012, plaintiff submitted a health service request stating that he was in severe pain on a daily basis and requesting a steroid injection in his right hip.  Staff responded, letting him know that they had scheduled a physician appointment for the purpose of discussing that issue.  On March 19, 2012, plaintiff was prescribed 500 milligrams of naproxen, 600 milligrams of gabapentin and pain rub.

Defendant saw plaintiff on March 22, 2012 and ordered that Dr. O'Brien follow up to review Dr. Illgen's note regarding injections.  On April 27, 2012, Dr. O'Brien performed a chart review and recommended a steroid injection in plaintiff's right hip.  The same day, defendant submitted a Class III request for approval of that treatment. On April 28, 2012, plaintiff submitted a health service request, saying that "[t]he pain in [his right] hip continues to be an issue" and asking that he be considered for steroid injections for treatment of his hip pain.  On April 29, 2012, staff responded to plaintiff, letting him know that the request had been submitted for him to go off site for an injection and was pending approval.

Plaintiff submitted a health service request on May 23, 2012, stating that he was in

8

pain and inquiring whether anything else could be done for him.  Defendant responded in writing the next day, telling plaintiff that he was scheduled for a steroid injection at UW Hospital.  (Plaintiff believes that the appointment was scheduled only because prison officials were now aware of his lawsuit but he has not submitted any admissible evidence suggesting that Suliene was aware of the lawsuit at this time.  Plaintiff's complaint was docketed in this court on May 25, 2012.)

On May 29, 2012, plaintiff received a steroid injection in his right hip at UW Hospital.  The physician who performed the injection indicated that the injections could be performed every two months as needed.  Plaintiff states that his pain subsided for about ten weeks.  On May 30, 2012, defendant submitted another Class III request for approval for plaintiff's next injection in two to three months.  On August 7, 2012, plaintiff received a second steroid injection at UW Hospital.

Plaintiff states that between "at least August 2011 and May 2012," each time plaintiff met with defendant, he would tell her that the medications she was prescribing him were not working and whatever new medications she would prescribe would not work.  (Plaintiff states that at one time or another he was prescribed gabapentin, analgesic balm, naproxen, acetaminophen and ibuprofen, "among others" during this time.)

Between August 4, 2011 (when plaintiff injured himself by slipping on a wet floor) and his first corticosteroid injection in May 2012, plaintiff filed more than 30 health service requests stating that the pain medications he was being given were not working and that he wanted "needle injections."  Most of these requests were referred to defendant.  At one point defendant "yelled at" plaintiff for filing too many requests.

9

In addition, at some point between August 2011 and March 2012, plaintiff informed defendant verbally and in writing about the injections he had received while he was treated by Dr. Bong, but she stated "that he would not get them, that he was in prison now," that she was the doctor, not he, and "he would get what she said he would get and that was all."

At a January 22, 2013 appointment with defendant, plaintiff asked to be seen at the UW Orthopedic Clinic again, and defendant advised him that staff was in the process of scheduling an appointment.  He mentioned that he wanted more done for his hip, which defendant said would be determined after he followed up with the physicians at the UW Orthopedic Clinic.  Plaintiff states that defendant told him that "she was the doctor, [plaintiff] was the inmate and that [he] was not going to tell her how to do her job and she did not care about any lawsuits [he] filed."  Defendant stated further that plaintiff "was not going to demand injections and that is exactly why she did not give [plaintiff] the[m] right away."

OPINION

To succeed on a motion for summary judgment, the moving party must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Indiana Grocery, Inc. v. Super Valu Stores, Inc., 864 F.2d 1409, 1412 (7th Cir. 1989).  "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party."  Brummett v. Sinclair Broadcast Group, Inc., 414 F.3d 686, 692 (7th Cir. 2005).  If the nonmoving party fails to establish the

existence of an essential element on which that party will bear the burden of proof at trial, summary judgment for the moving party is proper.  Celotex, 477 U.S. at 322.  I granted plaintiff leave to proceed on Eighth Amendment deliberate indifference claims regarding defendant's treatment of his hip pain.  Under the Eighth Amendment, prison officials have a duty to provide medical care to those being punished by incarceration.  Estelle v. Gamble, 429 U.S. 97, 103 (1976).  To state an Eighth Amendment medical care claim, a prisoner must allege facts from which it can be inferred that he had a "serious medical need" and that prison officials were "deliberately indifferent" to this need.  Id. at 104.

A "serious medical need" may be a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person.  Johnson v. Snyder, 444 F.3d 579, 584-85 (7th Cir. 2006).  A medical need may be serious if it is life-threatening, carries risks of permanent serious impairment if left untreated, results in needless pain and suffering, Gutierrez v. Peters, 111 F.3d 1364, 1371-73 (7th Cir. 1997), "significantly affects an individual's daily activities," Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998), or otherwise subjects the prisoner to a substantial risk of serious harm, Farmer v. Brennan, 511 U.S. 825, 847 (1994).

"Deliberate indifference" means that the defendant was aware that the prisoner needed medical treatment but disregarded the risk by failing to take reasonable measures.  Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997).  However, inadvertent error, negligence, gross negligence and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment.  Vance v. Peters, 97 F.3d 987, 992 (7th Cir. 1996); Snipes, 95 F.3d at 590-91.  Thus, disagreement with a doctor's medical judgment, incorrect

11

diagnosis or improper treatment resulting from negligence is insufficient to state an Eighth Amendment claim. Gutierrez, 111 F.3d at 1374; Norfleet v. Webster, 439 F.3d 392, 396 (7th Cir. 2006) ("[E]ven admitted medical malpractice does not give rise to a constitutional violation.").

With regard to the question whether plaintiff has a serious medical need, plaintiff submits proposed findings of fact stating that he suffered (and continues to suffer) severe chronic pain in his right hip. Defendant raises undeveloped arguments suggesting that plaintiff's pain does not qualify as a serious medical need, but plaintiff's proposed findings easily survive the summary judgment stage on this issue. Chronic severe pain is a serious medical need. Smith v. Knox County Jail, 666 F.3d 1037, 1039-40 (7th Cir. 2012) ("[D]eliberate indifference to prolonged, unnecessary pain can itself be the basis for an Eighth Amendment claim."); Gutierrez, 111 F.3d at 1373.

With regard to the question whether defendant was deliberately indifferent to plaintiff's pain, plaintiff continues to argue that defendant "denied [him] the prescribed course of pain treatment," but the parties' summary judgment materials show that Illgen did not formally "prescribe" the steroid injections. Rather, Illgen stated under the "plan" section of his report that prison medical staff "continue providing nonoperative care with the use of NSAIDs and injections as needed at his correctional institution." Thus I do not understand plaintiff's claim as based on defendant's *interference* with a specialist's order or prescription, Ralston v. McGovern, 167 F.3d 1160, 1161-62 (7th Cir. 1999) (refusal to provide prescribed treatment may be deliberate indifference), because the only reasonable reading of Illgen's report is that Illgen allowed defendant to prescribe NSAIDs or injections

12

in her discretion "as needed."

Nonetheless, defendant's course of treatment could still violate the Eighth Amendment if she acted with deliberate indifference by persisting in providing ineffective pain treatment rather than providing the recommended steroid injections sooner. Gonzalez v. Feinerman, 663 F.3d 311, 314 (7th Cir. 2011) ("physicians were obligated not to persist in ineffective treatment"); Berry v. Peterman, 604 F.3d 435, 441 (7th Cir. 2010) ("[A] doctor's choice of the easier and less efficacious treatment for an objectively serious medical condition can still amount to deliberate indifference for purposes of the Eighth Amendment.")

From the timeline itself, it is difficult to see how defendant's course of treatment could demonstrate deliberate indifference. Before the January 12 report and up until the February 17, 2012 appointment, defendant had either been prescribing plaintiff different types and dosages of NSAID medication or overseeing those prescriptions (it is difficult to tell from the handwritten records precisely who prescribed each type or dosage of medication, although the parties seem to agree that defendant was responsible for these actions). Although plaintiff had often complained about the medications, the provision of NSAIDs ended up being part of Illgen's recommendation for treatment. At the February 17, 2012 appointment, defendant decided to stick with the current medications and told plaintiff that she could not give him the injections because the prison was not equipped to give the injections and that Dr. Illgen had not specified where on plaintiff's body the injections were to be administered. At the March 22, 2012 appointment, defendant ordered that orthopedic specialist Dr. O'Brien follow up to review Illgen's note about injections. On

April 27, 2012, Dr. O'Brien performed a chart review and recommended a steroid injection in plaintiff's right hip, and later that day, defendant submitted a Class III request for approval of that treatment.

Plaintiff characterizes the delay as a "138 day delay" between January 12 and May 29, 2012, but I cannot see any basis for holding defendant responsible for any delays that occurred after March 22, as that was the day she referred plaintiff to Dr. O'Brien to give further consideration to injections. After O'Brien prescribed an injection, defendant immediately submitted a Class III request for approval of that treatment. I cannot see any reason to hold her responsible for delay involved in the Department of Corrections bureaucracy approving the request or scheduling the appointment at UW Hospital; waiting weeks to see a specialist is common for patients in or out of prison.

In an effort to show that defendant was deliberately indifferent by failing to provide the injections immediately after Illgen's recommendation as opposed to waiting until March 22 to refer plaintiff to Dr. O'Brien, plaintiff refers to conversations he had with defendant in which she stated that she "would not do anything more" for plaintiff, or in the case of the January 22, 2013 appointment, flat out stated that plaintiff "was not going to demand injections and that is exactly why she did not give [plaintiff] the[m] right away," suggesting that defendant intentionally delayed treatment she knew would be more effective. Although these allegations are troubling and defendant did not dispute them or even explain the context in which she made those statements, I conclude that they do not imply her deliberate indifference toward plaintiff. The undisputed medical records show that her actions did not match those words. Regardless of defendant's statements or anger toward

14

plaintiff, she continued to respond to his complaints by attempting to treat plaintiff's pain. For example, as recently as December 9, 2011, she had prescribed a new, higher dosage of ibuprofen for plaintiff.  Moreover, even with regard to defendant's alleged denial of Illgen's recommendation for steroid injections, it is defendant herself who set up the appointment with Illgen and then referred plaintiff to Dr. O'Brien, who ultimately prescribed the first injection.  Plaintiff clearly did not agree with defendant's course of treatment, but this disagreement is not sufficient to sustain an Eighth Amendment claim.  I conclude that plaintiff has not shown that defendant's treatment decisions were "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision[s] on such a judgment." Estate of Cole by Pardue v. Fromm, 94 F.3d 254, 261 (7th Cir. 1996).  Accordingly, I will grant defendant's motion for summary judgment.


ORDER

IT IS ORDERED that

1.  Plaintiff Jody M. Wagner's motion for more time to take discovery under Fed. R. Civ. P. 56(d), dkt. #29, is DENIED.

2. Defendant Dalia Suliene's motion for summary judgment, dkt. #16, is GRANTED.

The clerk of court is directed to enter judgment in favor of defendant and close the case.

Entered this 24th day of April, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge